Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALLAN DAVIS,<br><br>    Plaintiff,<br><br>v.<br><br>ALEXION PHARMACEUTICALS, INC., DAVID R. BRENNAN, CHRISTOPHER J. COUGHLIN, DEBORAH DUNSIRE, PAUL A. FRIEDMAN, LUDWIG HANTSON, JOHN T. MOLLEN, FRANCOIS NADER, JUDITH A. REINSDORF, and ANDREAS RUMMELT,<br><br>    Defendants. | Case No:<br><br><br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Allan Davis ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

## **NATURE OF THE ACTION**

1.      This is an action against Alexion Pharmaceuticals, Inc. ("Alexion" or the "Company"), and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange

1

Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of Alexion by AstraZeneca PLC ("AstraZeneca") and its subsidiaries.

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, and the alleged misstatements entered and the subsequent damages occurred in this District.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of Alexion common stock.

7. Defendant Alexion develops and commercializes various therapeutic products. The Company is incorporated in Delaware. The Company's common stock trades on the Nasdaq under the ticker symbol, "ALXN."

8. Defendant David R. Brennan ("Brennan") is Chairman of the Board of the Company.

9. Defendant Christopher J. Coughlin ("Coughlin") is a director of the Company.

10. Defendant Deborah Dunsire ("Dunsire") is a director of the Company.

11. Defendant Paul A. Friedman ("Friedman") is a director of the Company.

12. Defendant Ludwig Hantson ("Hantson") is Chief Executive Officer and a director of the Company.

13. Defendant John T. Mollen ("Mollen") is a director of the Company.

14. Defendant Francois Nader ("Nader") is a director of the Company.

15. Defendant Judith A. Reinsdorf ("Reinsdorf") is a director of the Company.

16. Defendant Andreas Rummelt ("Rummelt") is a director of the Company.

17. Defendants Brennan, Coughlin, Dunsire, Friedman, Hantson, Mollen, Nader, Reinsdorf, and Rummelt are collectively referred to herein as the "Individual Defendants."

18. Defendants Alexion and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

19. On December 12, 2020, Alexion and AstraZeneca announced that they had entered into a definitive agreement for AstraZeneca to acquire Alexion. Under the terms of the agreement, Alexion shareholders would receive $60.00 in cash and 2.1243 AstraZeneca American Depositary Shares for each Alexion share. The press release announcing the merger states, in pertinent part:

**AstraZeneca to Acquire Alexion, Accelerating the Company's Strategic and Financial Development**

*Greater scientific presence in immunology by adding Alexion's innovative complement-technology platforms and strong pipeline*

*Dedicated rare disease unit to be headquartered in Boston*

*Geographical presence to be enhanced with broad coverage across primary, speciality and highly specialised care*

*Double-digit revenue growth through 2025; acquisition strengthens AstraZeneca's broad-based revenue and the company will further globalise Alexion's portfolio*

*Enhanced operating margin and cash flow to enable rapid debt reduction with an ambition to increase the dividend*

*The acquisition will be immediately core earnings-accretive and value-enhancing, and is aligned with stated capital-allocation priorities*

December 12, 2020 07:48 AM Eastern Standard Time

CAMBRIDGE, England & BOSTON--(BUSINESS WIRE)--AstraZeneca and Alexion Pharmaceuticals, Inc. (Alexion) have entered into a definitive agreement for AstraZeneca to acquire Alexion.

Alexion shareholders will receive $60 in cash and 2.1243 AstraZeneca American Depositary Shares (ADSs) (each ADS representing one-half of one (1/2) ordinary share of AstraZeneca, as evidenced by American Depositary Receipts (ADRs)) for each Alexion share. Based on AstraZeneca's reference average ADR price of $54.14, this implies total consideration to Alexion shareholders of $39bn or $175 per share.

The boards of directors of both companies have unanimously approved the acquisition. Subject to receipt of regulatory clearances and approval by shareholders of both companies, the acquisition is expected to close in Q3 2021, and upon completion, Alexion shareholders will own c.15% of the combined company.

Pascal Soriot, Chief Executive Officer, AstraZeneca, said: "Alexion has established itself as a leader in complement biology, bringing life-changing benefits to patients with rare diseases. This acquisition allows us to enhance our presence in immunology. We look forward to welcoming our new colleagues at Alexion so that we can together build on our combined expertise in immunology and precision

medicines to drive innovation that delivers life-changing medicines for more patients."

Ludwig Hantson, Ph.D., Chief Executive Officer, Alexion, said: "For nearly 30 years Alexion has worked to develop and deliver transformative medicines to patients around the world with rare and devastating diseases. I am incredibly proud of what our organisation has accomplished and am grateful to our employees for their contributions. This transaction marks the start of an exciting new chapter for Alexion. We bring to AstraZeneca a strong portfolio, innovative rare disease pipeline, a talented global workforce and strong manufacturing capabilities in biologics. We remain committed to continuing to serve the patients who rely on our medicines and firmly believe the combined organisation will be well positioned to accelerate innovation and deliver enhanced value for our shareholders, patients and the rare disease communities."

*   *   *

**Details of the acquisition**

<u>Key terms</u>

The acquisition will be undertaken through a US statutory merger in which Alexion shareholders will receive $60 in cash and 2.1243 new AstraZeneca ADSs listed on the Nasdaq exchange for each of their Alexion shares. The cash and ADS consideration represents an c.45% premium to Alexion shareholders based on the closing stock price of Alexion on 11 December 2020 and a c.43% premium, based on the 30-day volume-weighted average closing stock price of $122.04 before this announcement. If they elect, Alexion shareholders may receive their allocation of AstraZeneca ADSs in the form of a corresponding number of ordinary shares of AstraZeneca in addition to the cash consideration.

Based on AstraZeneca's reference average ADR price of $54.14, this implies total consideration to Alexion shareholders of $39bn or $175 per share.

<u>Financing</u>

To support the financing of the offer consideration, AstraZeneca has entered into a new committed $17.5bn bridge-financing facility, provided by Morgan Stanley, J.P. Morgan Securities plc and Goldman Sachs. The bridge-financing facility is available for an initial term of 12 months from the earlier of the date of completion of the acquisition and 12 December 2021 with up to two six-month extensions available at the discretion of AstraZeneca. The initial bridge financing facility is intended to cover the financing of the cash portion of the acquisition consideration and associated acquisition costs and to refinance the existing term loan and revolving credit facilities of Alexion. In due course, AstraZeneca intends to refinance the initial bridge-financing facility through a combination of new

5

medium-term bank loan facilities, debt-capital market issuances and business cash flows.

The acquisition is expected to significantly enhance cash generation, which will support rapid debt reduction and overall deleveraging. AstraZeneca remains committed to maintaining a strong investment-grade credit rating. The dividend policy remains unchanged with a commitment to a progressive dividend policy; dividend cover is expected to be materially enhanced as a result of the acquisition.

Further information on synergies

The acquisition is expected to realise recurring run-rate pre-tax synergies of c.$500m per year from the combined Group, generated from commercial and manufacturing efficiencies as well as savings in central costs, with full run-rate expected to be achieved by end of the third year following completion of the acquisition.

To realise the total synergies, AstraZeneca expects to incur one-time cash costs of c.$650m, during the first three years following completion.

Management and employees

Members of Alexion's current senior management team will lead the future rare-disease activities. Under the terms of the acquisition agreement, AstraZeneca has agreed that for 12 months following closing, it will provide the Alexion employees with the same level of salary as such employees had before closing, incentive compensation opportunities that are in the aggregate no less favourable than those provided before closing and substantially comparable benefits to those provided before closing.

Governance

The companies will mutually agree on two individuals from the Alexion board of directors who will join the AstraZeneca board as directors upon closing of the acquisition.

Closing conditions

Closing of the acquisition is subject to approval by AstraZeneca and Alexion shareholders, certain regulatory approvals, approval of the new AstraZeneca shares for listing with the Financial Conduct Authority and to trading on the London Stock Exchange, and other customary closing conditions.

The acquisition is a Class 1 transaction for AstraZeneca and as such, will require the approval of its shareholders to comply with the UK Listing Rules. A shareholder circular, together with notice of the relevant shareholder meeting, will be

6

distributed to shareholders in the first half of 2021. The Alexion proxy statement is also expected to be published in the first half of 2021.

Subject to the satisfaction of the closing conditions to the proposed acquisition, the companies expect the acquisition to close in Q3 2021.

Termination

The acquisition terms provide that Alexion will be liable to pay a break fee of up to $1.2bn to AstraZeneca in certain specified circumstances (including a change of Alexion's board recommendation or completion of an alternative acquisition). AstraZeneca will also be required to pay Alexion a break fee of $1.4bn in certain specified circumstances, including a change of AstraZeneca's board recommendation.

Recommendation

The boards of directors of both Alexion and AstraZeneca have unanimously approved the proposed acquisition and resolved to recommend that their respective shareholders vote in favour of it.

Advisors to AstraZeneca

Evercore Partners International LLP ("Evercore"), and Centerview Partners UK LLP ("Centerview Partners") are acting as lead financial advisers. Ondra LLP ("Ondra") are providing advice as part of their ongoing financial advisory services. Morgan Stanley & Co. International plc ("Morgan Stanley") and Morgan Stanley Bank International Limited and J.P. Morgan are acting as financial advisors and lead debt financing underwriters. Goldman Sachs Bank USA is acting as lead debt financing underwriter. Morgan Stanley and Goldman Sachs International are joint corporate brokers. Evercore is acting as sponsor in relation to the transaction described in this announcement. Freshfields Bruckhaus Deringer is acting as legal counsel.

Advisors to Alexion

Bank of America Securities is serving as financial advisor to Alexion, and Wachtell, Lipton, Rosen & Katz is serving as legal counsel.

**Alexion**

Alexion is a global biopharmaceutical company focused on serving patients and families affected by rare diseases and devastating conditions through the discovery, development and commercialisation of life-changing medicines. As a leader in rare diseases for more than 25 years, Alexion has developed and commercialises two approved complement inhibitors to treat patients with PNH and atypical haemolytic

uremic syndrome, as well as the first and only approved complement inhibitor to treat anti-acetylcholine receptor antibody-positive generalised myasthenia gravis and neuromyelitis optica spectrum disorder. Alexion also has two highly innovative enzyme replacement therapies for patients with life-threatening and ultra-rare metabolic disorders, hypophosphatasia and lysosomal acid lipase deficiency as well as the first and only approved Factor Xa inhibitor reversal agent. In addition, Alexion is developing several mid-to-late-stage therapies, including a copper-binding agent for Wilson disease, FcRn antibody for rare IgG-mediated diseases and an oral Factor D inhibitor as well as several early-stage therapies, including one for light chain amyloidosis, a second oral Factor D inhibitor and a third complement inhibitor. Alexion focuses its research efforts on novel molecules and targets in the complement cascade and its development efforts on haematology, nephrology, neurology, metabolic disorders, cardiology, ophthalmology and acute care. Headquartered in Boston, Massachusetts, Alexion has offices around the globe and serves patients in more than 50 countries. During 2019, Alexion generated a total revenue of $5bn and profit before tax of $2.2bn. As of 30 September 2020, Alexion had gross assets of $17.5bn. Alexion's executive officers are Ludwig Hantson (Chief Executive Officer), Aradhana Sarin (Chief Financial Officer), Tanisha Carino (Chief Corporate Affairs Officer), Ellen Chiniara (Chief Legal Officer and Corporate Secretary), Indrani Franchini (Chief Compliance Officer), Brian Goff (Chief Commercial and Global Operations Officer), and John Orloff (Head of Research and Development). This press release and further information about Alexion can be found at www.alexion.com.

\* \* \*

**AstraZeneca**

AstraZeneca (LSE/STO/Nasdaq: AZN) is a global, science-led biopharmaceutical company that focuses on the discovery, development and commercialisation of prescription medicines, primarily for the treatment of diseases in three therapy areas - Oncology, Cardiovascular, Renal & Metabolism, and Respiratory & Immunology. Based in Cambridge, UK, AstraZeneca operates in over 100 countries and its innovative medicines are used by millions of patients worldwide. Please visit astrazeneca.com and follow the Company on Twitter @AstraZeneca.

20. On February 19, 2021, Defendants caused to be filed with the SEC a Form F-4 Registration Statement (the "Registration Statement") under the Securities Act of 1933 in connection with the Proposed Transaction.

**B. The Registration Statement Contains Materially False and Misleading Statements and Omissions**

21. The Registration Statement, which recommends that Alexion shareholders vote in

8

favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Alexion's and AstraZeneca's financial projections; (ii) the financial analyses performed by Alexion's financial advisor, BofA Securities, Inc. ("BofA"), in connection with its fairness opinion; and (iii) the sales process leading up to the Proposed Transaction.

22. The omission of the material information (referenced below) renders the following sections of the Registration Statement false and misleading, among others: (i) Recommendation of the Alexion Board of Directors; Alexion's Reasons for the Transaction; (ii) Opinion of Alexion's Financial Advisor; (iii) Alexion Unaudited Prospective Financial Information; and (iv) Background of the Transaction.

23. Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote on the Proposed Transaction, Alexion shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

1. **Material Omissions Concerning Alexion's and AstraZeneca's Financial Projections**

24. The Registration Statement omits material information concerning Alexion's and AstraZeneca's financial projections.

25. With respect to the "Alexion management unaudited PTRS Alexion projections," the Registration Statement fails to disclose the following: (1) all line items underlying (i) Total Revenue, (ii) Non-GAAP Operating Income (Post-SBC), (iii) Tax-Effected EBIT, (iv) Unlevered Free Cash Flow, and (v) Non-GAAP EPS (Pre-SBC); and (2) a reconciliation of all non-GAAP to GAAP financial metrics.

26. With respect to the "the unaudited non-PTRS Alexion projections," the

Registration Statement fails to disclose the following: (1) all line items underlying (i) Total Revenue, (ii) Gross Profit, (iii) Operating Profit, and (iv) Non-GAAP Net Income; and (2) a reconciliation of all non-GAAP to GAAP financial metrics.

27.     With respect to the "Alexion management unaudited AstraZeneca projections," the Registration Statement fails to disclose the following: (1) all line items underlying (i) Total Revenue, (ii) Core EBIT, (iii) Unlevered Free Cash Flow, and (iv) Core EPS; and (2) a reconciliation of all non-GAAP to GAAP financial metrics.

28.     When a company discloses non-GAAP financial metrics in a Registration Statement, the company must also disclose all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. The SEC has increased its scrutiny of a company's use of non-GAAP financial measures as such measures can be misleading and "crowd out" more reliable GAAP information.[1]

29.     The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and combined company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Mar. 17, 2021) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

30. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning BofA's Analyses

31. In connection with the Proposed Transaction, the Registration Statement omits material information concerning analyses performed by BofA.

#### a. *BofA's Financial Analyses of Alexion*

32. With respect to BofA's "*Selected Publicly Traded Companies Analysis*" and "*Selected Precedent Transactions Analysis*," the Registration Statement fails to disclose the individual multiples and financial metrics of the companies and transactions BofA observed in its analyses.

33. The Registration Statement fails to disclose the following concerning BofA's "*Discounted Cash Flow Analysis*": (1) all line items underlying the standalone, unlevered, after-tax free cash flows Alexion was expected to generate over the period from September 30, 2020 through December 31, 2040; (2) the individual inputs and assumptions underlying the discount rate range of 7.0% to 9.5%; (3) Alexion's net debt as of September 30, 2020; (4) the number of fully-diluted shares of Alexion common stock outstanding; and (5) the terminal values used in the analysis.

34. With respect to BofA's "*Discounted Cash Flow Analysis Sensitivity Analysis*," the Registration Statement fails to disclose the individual inputs and assumptions underlying the

11

illustrative discount rate range of 8.0% to 10.5%, ~40% EU price decrease for ANDEXXA as compared to Alexion management unaudited Alexion projections, and ~5% ULTOMIRIS price decrease in 2023 and subsequently every 4 years thereafter.

35. With respect to BofA's "*Wall Street Analysts Price Targets*," the Registration Statement fails to disclose: (1) the individual price targets observed by BofA in its analyses; and (2) the sources thereof.

36. With respect to BofA's "*Premia Paid Analysis*," the Registration Statement fails to disclose each transaction and the premiums paid therein.

    b. ***BofA's Financial Analyses of AstraZeneca***

37. With respect to BofA's "*Selected Publicly Traded Companies Analysis*," the Registration Statement fails to disclose the individual multiples and financial metrics of the companies BofA observed in its analyses.

38. The Registration Statement fails to disclose the following concerning BofA's "*Discounted Cash Flow Analysis*": (1) all line items underlying the standalone, unlevered, after-tax free cash flows AstraZeneca was expected to generate over the period from September 30, 2020 through December 31, 2030; (2) the terminal values for AstraZeneca; (3) the individual inputs and assumptions underlying the (i) range of perpetuity growth rates of negative 3.0% to positive 1.0%, and (ii) discount rates ranging from 6.0% to 7.5%; (4) AstraZeneca's net debt as of September 30, 2020; and (5) the number of fully-diluted AstraZeneca ordinary shares outstanding.

39. With respect to BofA's "*Wall Street Analysts Price Targets*," the Registration Statement fails to disclose: (1) the individual price targets observed by BofA in its analyses; and (2) the sources thereof.

40. The valuation methods, underlying assumptions, and key inputs used by

BofA in rendering its purported fairness opinion must be fairly disclosed to Alexion shareholders. The description of BofA's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Alexion shareholders are unable to fully understand BofA's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3. Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction

41. The Registration Statement omits material information concerning the sales process leading up to the Proposed Transaction.

42. The Registration Statement provides that one of Alexion's activist investors, Elliot Advisors (UK) Limited ("Elliott"), began recommending in September 2019 and into the fourth quarter of 2019 that the Board "immediately launch a proactive process to explore a sale of the company."

43. On December 9, 2019, Elliott issued a public statement setting forth its view, "privately previously communicated to Alexion, that Alexion would be a highly valuable strategic asset for a number of larger pharmaceutical companies and reiterating Elliott's belief that Alexion should launch a proactive sale process."

44. To that end, in May 2020, Elliott "publicly reiterated these views in an open letter to the Alexion board of directors."

45. The Registration Statement, however, fails to adequately disclose what impact Elliott's statements and subsequent communications with Alexion had on Alexion's sales process leading up to the Proposed Transaction.

46. Further, Defendant Brennan previously served as a director and as CEO of AstraZeneca until retiring from those positions in June 2012. Defendant Brennan held approximately 81,000 shares of AstraZeneca ordinary shares as of the date of the Registration Statement and beneficially owned approximately 18,502 shares of Alexion stock as of February 12, 2021. Defendant Brennan also played a key role in negotiating the Proposed Transaction on behalf of Alexion.

47. The Registration Statement, however, fails to disclose what steps were taken by the Board, if any, to ensure the sales process was conducted in a fair and unbiased manner free of any potential conflicts of interest.

48. The Registration Statement also fails to sufficiently disclose all communications concerning post-transaction employment involving Alexion management and the Board that occurred during the negotiation of the Proposed Transaction.

49. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

50. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

51. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Registration Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

52. Each of the Individual Defendants, by virtue of his/her positions within the

Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Registration Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Registration Statement.

53. The false and misleading statements and omissions in the Registration Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

54. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

55. Because of the false and misleading statements and omissions in the Registration Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

56. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

57. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and

15

dissemination of the false and misleading Registration Statement.

58. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Registration Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

59. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Registration Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Registration Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Registration Statement.

60. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

61. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

62. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: March 17, 2021	Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
        zhalper@halpersadeh.com

*Counsel for Plaintiff*